UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES KILGORE,

    Plaintiff,

v.                                                                                              Case No. 3:17cv375-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the

final determination of the Commissioner of Social Security ("Commissioner")

denying James Kilgore's applications for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and

Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. §§ 1381-83. The

parties consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)

and Federal Rule of Civil Procedure 73 for all proceedings in this case, including

entry of final judgment. Upon review of the record before the court, I conclude the

findings of fact and determinations of the Commissioner are supported by substantial

evidence. The decision of the Commissioner, therefore, will be affirmed and the

applications for DIB and SSI denied.

ISSUES ON REVIEW

Mr. Kilgore, who will be referred to as claimant, plaintiff, or by name, asserts the ALJ erred by: (1) failing to properly reconcile Dr. Ragsdale's opinion with the residual functional capacity ("RFC"); and (2) failing to account for plaintiff's marked limitations in concentration, persistence, and pace in the RFC. (Doc. 20).

PROCEDURAL HISTORY

In February 2014, plaintiff filed applications for DIB and SSI, claiming disability beginning July 2, 2010, due to depression, lower back and neck problems, anxiety, and arm and leg pain. T. 116-17, 131-32.[1] The Commissioner denied the applications initially and on reconsideration. T. 186, 190, 196, 202. After a hearing on January 20, 2016, the ALJ found claimant not disabled under the Act. T. 23-36. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-4. The Commissioner's determination is now before the court for review.

STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936

---

[1] The administrative record filed by the Commissioner consists of 14 volumes (docs. 18-18 through 18-31) and has 914 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

Case No. 3:17cv375-CJK

F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead

Page 4 of 18

"must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

Case No. 3:17cv375-CJK

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[2]

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's RFC and vocational factors, he is not disabled.

### FINDINGS OF THE ALJ

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

•      Claimant meets the insured status requirements of the Act through September 30, 2015.  T. 25.

•      Claimant has not engaged in substantial gainful activity since July 2, 2010, the alleged onset date.  T. 25.

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Case No. 3:17cv375-CJK

- Claimant has the following severe impairments: peripheral vascular (arterial) disease, emphysema, depressive disorder, post-traumatic stress disorder, anxiety disorder, degenerative disc disease, and substance addiction disorders.  T. 25.

- Claimant has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with some limits.  Claimant can lift up to 30 pounds occasionally and 25 pounds frequently.  He can sit, stand, or walk up to 6 hours each in an 8-hour workday.  Claimant requires the option to sit/stand at his option; and he can push/pull as much as he can lift/carry.  Claimant can occasionally stoop.  He can frequently be exposed to unprotected heights, moving mechanical parts, and operate a motor vehicle; and he can tolerate occasional exposure to dust, odors, fumes, and pulmonary irritants.  Claimant is further limited to simple, routine tasks and simple work-related decisions.  He can occasionally interact with co-workers, but should not work in a team; and he can occasionally interact with the public.  T. 27.

- Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 35.

- Claimant has not been under a disability, as defined in the Act, from July 2, 2010, through February 17, 2016.  T.36.

FACT BACKGROUND AND MEDICAL HISTORY

Because Mr. Kilgore challenges the ALJ's evaluation of his mental limitations, the following recitation of facts largely focuses on the evidence relevant to plaintiff's mental health. At the January 2016 hearing before the ALJ, claimant offered testimony as to his health, daily activities, and work history. T. 45-115. He was born on July 11, 1964, and has an eighth-grade education. T. 114, 265. He previously worked as an automotive technician, material handler, and automotive mechanic. T. 100-01.

Plaintiff has "had back trouble all [his] life[,]" but did not take any medications for the back pain when he was working. T. 65. He began taking medication in 2008 for neck pain, but the medication did not interfere with his ability to work full-time. T. 67-69. Plaintiff suffered a workplace injury in July 2010, and says he could not return to work because he "couldn't stand" due to the "burning, stabbing pains through [his] legs[.]" T. 69-70. The only medication he currently takes is hydrocodone. T. 72. Plaintiff added, however, that, when he can, he gets "medicine off the street to help . . . cope with [pain]." T. 80. Plaintiff acknowledged it was wrong, but testified he does so because he lacks health insurance. T. 90.

According to the hearing testimony, plaintiff lives with his girlfriend. T. 77. He cares for a large dog, providing the dog with food and water. T. 78. Claimant also takes the dog outside and "toss[es] the ball with him, or let[s] him jump on his

rope" for exercise. T. 78. Plaintiff testified he "spend[s] much of [his] time on [his] couch." T. 79. He "tries not to do anything, or move, or turn the wrong way to cause [himself] to hurt worse." T. 79. Claimant also testified he "sometimes" has difficulty driving because he "black[s] out"; in addition, "having to sit and ride" "causes . . . very significant pain[.]" T. 112.

Claimant admitted to a long history of substance abuse, which included methamphetamine, marijuana, tobacco, and, at one point, drinking a case of beer a day. T. 72. He also admitted to adjusting his medications, including Seroquel, without input from his physician. T. 72. Claimant stated he has been prescribed Prozac, Cymbalta, and Klonopin, but cannot afford the medications. T. 90, 93-94.

Claimant said posttraumatic stress disorder ("PTSD") affects him "pretty often, because there are certain things that just, that trigger the really bad mood swings, and the feeling of just wanting to just die." T. 95. He has suicidal ideations "just about every day[,]" and "[s]ome days more than others." T. 95. Plaintiff also testified to sleeping problems, stating "I think a lot about my son when I go to— man, I can't sleep, because the vision of him being in that casket, it makes me restless[.]" T. 97. He indicated he had three inpatient admissions for mental health treatment when he was in his mid-30s. T. 71.

On April 28, 2014, Julian A. Salinas, Ph.D., performed a consultative psychological examination of plaintiff. T. 634. Claimant reported anxiety attacks

"twice per week to twice per month" and "additional mood problems consisting of passive death wishes, loss of interest in pleasurable activity, and sad mood." T. 635. Mr. Kilgore also reported having difficulty with concentration. T. 636. Dr. Salinas indicated claimant provided relevant and appropriately elaborated answers in response to questions. T. 636. A mental status exam revealed plaintiff could recount basic life events, but had difficulty estimating their chronology. T. 636. Claimant refused to proceed past one iteration of serial 7's subtraction. T. 636. Dr. Salinas indicated plaintiff's mood was restricted in range and depressed in content. T. 636. Dr. Salinas diagnosed depressive disorder, anxiety disorder, and polysubstance dependence, and concluded plaintiff's global assessment of functioning score is 58. T. 636.

As part of the disability application process, state agency psychologists reviewed claimant's medical records and offered opinions as to functional limitations. On May 5, 2014, James Mendelson, Ph.D., found plaintiff had moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace. T. 122, 137. Specifically, Dr. Mendelson determined plaintiff had moderate limitations in ability to interact appropriately with the public and get along with coworkers. T. 127-128, 142-43.

On June 10, 2014, Kevin Ragsdale, Ph.D., determined plaintiff had moderate difficulties in maintaining social functioning and maintaining concentration,

persistence, or pace. T. 155, 171. Dr. Ragsdale specified claimant's ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, and to complete a normal workday or workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace was moderately limited. T. 159-160, 175-176. Further, in rating claimant's social interaction limitations, Dr. Ragsdale indicated claimant's abilities to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes were moderately limited. T. 160, 176. Dr. Ragsdale also noted moderate limitations in plaintiff's ability to respond appropriately to changes in the work setting. T. 160, 176.

During the first half of 2015, plaintiff sought mental health treatment from Debra Edelson, M.D. T. 644-50. Dr. Edelson diagnosed posttraumatic stress disorder and major depressive disorder, and prescribed Seroquel, Cymbalta, Clonidine, and Vistaril. T. 645-46, 649-50. Nevertheless, Dr. Edelson consistently noted plaintiff's attention and concentration were fair. T. 644-50.

## ANALYSIS

Mr. Kilgore first contends the ALJ erred by failing to include all the limitations contained in Dr. Ragsdale's opinion in the RFC. (Doc. 20, p. 9-12). The

Case No. 3:17cv375-CJK

ALJ gave "great weight" to the opinion of Dr. Ragsdale, finding it consistent with the mental status examinations and the rest of the record. T. 34. The ALJ limited claimant to simple, routine tasks and simple work-related decisions, occasional interaction with co-workers and the public, and no teamwork. T. 27. Plaintiff, however, maintains the ALJ's RFC assessment did not account for Dr. Ragsdale's findings that plaintiff "can only perform solitary tasks, had moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors, and handle only well-explained or gradually introduced change." (Doc. 20, p. 10).

The ALJ's consideration of Dr. Ragsdale's opinion does not constitute reversible error. Dr. Ragsdale concluded plaintiff's ability to work in coordination with or in proximity to others without being distracted by them was moderately limited. T. 159-60, 175-76. Dr. Ragsdale explained that, in socially-oriented jobs, plaintiff's "mental symptoms could adversely affect his ability" to remain optimally focused, consistently display exemplary levels of persistence/assiduousness, and be reliable. T. 160, 176. Nevertheless, Dr. Ragsdale found claimant capable of "making basic decisions and attending to/completing solitary vocational tasks[.]" T. 160, 176.

The ALJ accounted for these findings in the RFC. The ALJ limited Mr. Kilgore to occasional interaction with co-workers and precluded him from working

in teams.  T. 27.  By finding plaintiff could not perform vocational tasks as a member of a team, the ALJ effectively limited plaintiff to solitary tasks.  Plaintiff, therefore, has failed to show the ALJ did not incorporate Dr. Ragsdale's findings regarding solitary tasks.

Dr. Ragsdale also found moderate limitation in claimant's ability to accept instructions and respond appropriately to criticism from supervisors.  T. 160, 176.  Dr. Ragsdale went on to explain, however, that Mr. Kilgore is "generally capable of . . . accepting constructive, task-specific supervisory input[.]"[3]  T. 160, 176.  Thus, the ALJ's decision to not include a limitation in the RFC regarding interactions with supervisors is consistent with Dr. Ragsdale's opinion.  Moreover, the ALJ limited claimant to occasional interaction with coworkers and the public.  T. 27.  The ALJ "was not required to refer to supervisors when the residual functional capacity assessment and the hypothetical question included a restriction on [claimant's] social interaction in the workplace."  *Brothers v. Comm'r of Soc. Sec.*, 648 F. App'x 938, 939 (11th Cir. 2016) (holding RFC limiting the claimant to "only occasional interaction with the public and co-workers" accounted for "extreme limitations in interacting with the public, coworkers, and supervisors").

---

[3] Plaintiff also indicated he gets along with authority figures very well and has never been fired from a job because of problems getting along with other people.  T. 348.

Case No. 3:17cv375-CJK

Dr. Ragsdale also found moderate limitations in claimant's ability to respond appropriately to changes in the work setting. T. 160, 176. Dr. Ragsdale elaborated:

> [H]e may have difficulty adjusting to/going along with abrupt changes in the established work process/environment—especially those perceived as too challenging/demanding. But, there is no compelling evidence to suggest that there are significant limitations in his capacity to adjust to modifications in vocational duties that are well-explained or implemented gradually[.]

T. 161, 177.

The ALJ incorporated the adaptation limitation found by Dr. Ragsdale into the RFC by limiting claimant to simple, routine tasks. T. 27; *see Thompson v. Comm'r of Soc. Sec.*, No. 2:15-cv-53-FTM-CM, 2016 WL 1008444, at *9 (M.D. Fla. Mar. 15, 2016) (holding "although the ALJ did not expressly state in her RFC finding . . . that Plaintiff has a moderate limitation in her ability to respond appropriately to changes in the work setting, she appropriately incorporated the narrative findings of both psychologists when she included the limitation of 'simple, routine, and repetitive tasks' to the Plaintiff's RFC"). A restriction to routine tasks rules out the possibility claimant would be subject to abrupt changes in the workplace. In addition, plaintiff has not shown any of the jobs the ALJ found plaintiff could perform—mailroom clerk, production line solderer, office helper—feature abrupt changes in the workplace. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (After the Commissioner "produce[s] evidence that there is other work available in significant numbers in the national economy that the

claimant has the capacity to perform[,] . . . the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.") (citation omitted).

In sum, the mental limitations imposed in the ALJ-formulated RFC were consistent with Dr. Ragsdale's opinion. Plaintiff failed to show the ALJ overlooked any limitations found in Dr. Ragsdale's opinion. The ALJ's consideration of the opinion, therefore, does not require reversal.

Next, Mr. Kilgore argues the RFC determination did not account for his deficiencies in concentration, persistence, and pace.[4] (Doc. 20, p. 12-16). Although the ALJ found plaintiff had marked limitations in concentration, persistence, and pace, the ALJ concluded plaintiff retained the RFC to perform simple, routine tasks and make simple work-related decisions. T. 26-27.

"To evaluate the severity of a claimant's mental impairments in steps two and three, the regulations direct the ALJ to use a special Psychiatric Review Technique (PRT). Using this technique, the ALJ must decide if a claimant's mental impairments cause limitations in one of four broad functional areas, one of which is the claimant's ability to maintain concentration, persistence, or pace[.]" *Hines-*

---

[4] "Concentration, persistence, or pace refers to the claimant's ability to sustain focused attention and concentration sufficiently long enough to permit him to timely and appropriately complete tasks that are commonly found in work settings." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citation omitted).

*Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 (11th Cir. 2013) (citations, quotations, and alterations omitted).

"An ALJ must account for a claimant's limitations in concentration, persistence, or pace in a hypothetical question to the VE. An ALJ may account for these limitations by limiting the hypothetical to unskilled work 'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace.'" *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712 (11th Cir. 2015) (*quoting Winschel v. Comm'r of Sec. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Hypothetical questions may also implicitly account for limitations in concentration, persistence, and pace. *See Winschel*, 631 F.3d at 1180-81 (citing examples); *see also Hines-Sharp*, 511 F. App'x at 916 ("*Winschel* does not, however, stand for the proposition that an ALJ must intone the magic words concentration, persistence, and pace if the ALJ finds based on the PRT that a claimant has limitations in that broad functional area. . . . [A]n ALJ may account implicitly for those limitations in other ways when crafting a hypothetical.").

Here, the ALJ concluded plaintiff's deficiencies in concentration, persistence, and pace only prevented the performance of complex tasks. *See* T. 27 ("While the claimant's impairments may interfere with complex activities, the claimant's performance of a simple routine is appropriate, effective and sustainable."); T. 34

(noting Dr. Edelson's findings supported conclusion plaintiff had marked limitations in concentration, but "the medical record as a whole, including claimant's activities of daily living, his positive response to treatment, and his ability to engage in a long-term relationship, support the claimant is capable of performing simple, routine, repetitive tasks"). And the evidence supports the ALJ's determination that claimant can perform simple, routine tasks and make simple work-related decisions despite marked limitations in concentration, persistence, and pace.

Although plaintiff reported he can pay attention only for short periods of time and does not finish what he starts, plaintiff admitted he follows written and spoken instructions "fairly well." T. 347. Similarly, though claimant testified he "sometimes" has difficulty driving, T. 112, he conceded he could drive 10 to 15 minutes to a gas station to purchase cigarettes and Dr. Salinas reported plaintiff drove to the consultative exam. T. 345, 636. The evidence also indicates Mr. Kilgore can manage his own finances. T. 345-46, 636. Plaintiff's ability to drive and manage his finances supports the ALJ's determination that claimant could perform simple, routine tasks and make simple work-related decisions. *Cf. Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 615 (11th Cir. 2017) (noting the ability to handle personal finances and drive a car "inherently requires a minimum ability to focus, understand, and remember while exercising independent judgment and decision-making skills"). Considering Mr. Kilgore's testimony and his daily

activities, the ALJ could reasonably conclude the limitations, while possibly interfering with complex activities, were not so severe as to prevent claimant from performing a simple work routine.

The medical evidence also supports the determination Mr. Kilgore could perform simple, routine tasks. A neuropsychological exam performed by Galina Kats-Kagan, M.D., in April 2014 found plaintiff's attention span and concentration were normal. T. 629. Dr. Salinas's April 2014 psychological exam showed plaintiff: (1) "was able to spell the word 'world' and he correctly sequenced 5 of 5 letters while spelling backwards"; (2) "repeated a list of three unrelated objects and he recalled all three after a brief delay with a distractive task"; and (3) "provided relevant and appropriately elaborated answers" in response to questions. T. 636. Dr. Edelson's treatment notes from 2015 revealed claimant's attention and concentration were "fair." T. 645, 647, 649-50.

The opinion of the state agency psychologist also indicates Mr. Kilgore could perform simple, routine tasks and make simple work-related decisions. The ALJ disagreed with Dr. Ragsdale's determination that plaintiff had only moderate limitations in concentration, persistence, and pace. But Dr. Ragsdale also found: (1) no evidence of limitation in the ability to carry out very short and simple instructions; (2) no significant limitation in the ability to make simple work-related decisions; and (3) claimant was "capable of making basic decisions and attending to/completing

solitary vocational tasks comprised of simple, recurrent steps at an acceptable rate under normal supervision." T. 159-60. Dr. Ragsdale's opinion, therefore, supports the ALJ's RFC assessment.

Despite Mr. Kilgore's marked limitations in concentration, persistence, and pace, the medical and testimonial evidence supports the determination that claimant could still perform simple, routine tasks and make simple, work-related decisions. Thus, the ALJ's RFC determination is supported by substantial evidence.

Accordingly, it is ORDERED:

1.     The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2.     The clerk is directed to enter judgment in favor of the Commissioner and close the file.

DONE AND ORDERED this 6th day of September, 2018.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**